UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>v.<br><br>DENNIS L. MIGA<br>　　　　Defendant. | )<br>)<br>)    Case No. 4:19-cv-01015<br>)<br>)<br>)<br>) |

**UNITED STATES OF AMERICA'S COMPLAINT**

The United States of America, pursuant to 31 U.S.C. § 3711(g)(4)(C), at the direction of the Attorney General of the United States, or his delegate, and at the request of the Secretary of the Treasury, or his delegate, files this Complaint against Dennis L. Miga ("Miga") to reduce to judgment and collect outstanding civil penalties assessed against Miga for his willful failure to timely report his financial interest in a foreign bank account as required by 31 U.S.C. § 5314 and its implementing regulations, plus accrued interest on the assessed penalties, late payment penalties and associated fees.  Additionally, the United States intends to proceed under the Federal Debt Collection Practices Act (28 U.S.C. § 3001 *et seq.*) to collect any judgment it obtains in this case, including the use of all appropriate pre-judgment remedies, post-judgment remedies and the additional surcharge as authorized by 28 U.S.C. § 3011.  In support hereof, the United States alleges as follows:

**JURISDICTION AND VENUE**

1.　　The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345 and 1355 because this action arises under a federal statute for the recovery of a penalty and the United States is the Plaintiff.

1

2.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Miga is a United States citizen whose last known address was in Colleyville, Texas.  Alternatively, venue may be proper under 28 U.S.C. § 1395.

### MIGA FAILED TO TIMELY REPORT HIS FINANCIAL INTEREST IN HIS FOREIGN BANK ACCOUNTS

3.      31 U.S.C. § 5314 authorizes the Secretary of the Treasury to require United States citizens to report certain transactions with foreign financial entities.  Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the IRS for each year in which such relationship exists.  31 C.F.R. § 1010.350(a).

4.      To fulfill this reporting requirement, a person must file a Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR."  *See id.*  For the 2008 and 2009 years at issue, an FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."  31 C.F.R. § 1010.306(c).[1]

5.      During the 2008 and 2009 years, Miga was a United States Citizen.

---

[1] Beginning with the 2016 tax year, the due date of the FBAR form will be April 15.  Pub. L. No. 114-41, § 2006(b)(11).

*Miga's financial interest and signature authority in VP Bank Account*

6.     During 2008 and 2009, Miga, a United States citizen, had a financial interest in, or control over and/or signatory authority over, an account at VP Bank Limited in British Virgin Islands ("BVI") in the name of Bridgeport Group, Inc.

7.     Miga travelled to the BVI to set up an offshore structure with a foreign account to provide asset protection and estate planning for him and his family.

8.     Bridgeport International Group, Inc.,("Bridgeport") was incorporated on March 6, 2003, in the BVI after a meeting with Miga.

9.     During 2008 and 2009, Miga was a director of Bridgeport.

10.    Miga directed that a bank account in the name of Bridgeport be opened at VP Bank Limited in the BVI. ("VP Bank Account").

11.    Miga was the source of the funds in the VP Bank Account.

12.    In 2003, Miga transferred funds and assets in the aggregate amount of $9,275,580 to the VP Bank Account to fund the account.

    a.   In March of 2003, Miga transferred $2,538,801 into the VP Bank Account.

    b.   In April of 2003, Miga transferred $5,478,576 to the VP Bank Account.

    c.   In 2003, Miga also transferred bonds and stock shares valued at $1,257,689.10 to the VP Bank Account.

13.    The VP Bank Account's purpose was to prevent civil collection against Miga's assets held in a foreign account.

14.    Miga was a sophisticated investor who maintained investment accounts in the United States during 2008 and 2009.

15.    Miga actively directed and controlled the investments in the VP Bank Account.

16.     In 2008 and 2009, Miga directed transfers out of the VP Bank Account to other investments and purchases.

17.     In 2008, funds were transferred from VP Bank Account to Miga's son.

18.     In 2008, funds were transferred from VP Bank Account to pay for plastic surgery in Southlake, TX.

*Miga's financial interest and signature authority in Banco Nacional Account*

19.     In August of 2009, Miga opened an account at BN Banco Nacional, ("Banco Nacional Account"), in Costa Rica.

20.     Miga opened the Banco Nacional Account in the name of La Vida Esta LLena de Suenos LC Limitada. (In English, "Life is full of dreams limited").

21.     In 2009, Miga funded the Banco Nacional Account from the VP Bank Account.

22.     In 2009, Miga used the Banco Nacional Account for personal purchases in the United States.

23.     During 2009, Miga, a United States citizen, had a financial interest in, control over and/or signatory authority over, an account at BN Banco Nacional in Costa Rica.

*VP Bank Account and the Banco Nacional Account balances exceeded $10,000 in both 2008 and 2009*

24.     During 2008, the highest monthly balance of the VP Bank Account was $9,385,361.

25.     Even Miga's late filed 2008 FBAR lists the maximum value held in the VP Bank Account as $10,599,804 during 2008.

26.     During 2009 the highest monthly balance of the VP Bank Account was $4,238,048.

27.     Even Miga's late filed 2009 FBAR lists the maximum value held in the VP Bank Account as $9,515,092 during 2009.

28.     In both 2008 and 2009, the balances in the VP Bank Account exceeded $10,000.

29      During 2009, the highest account balance in the Banco Nacional Account was $17,956.50.  Miga's late filed 2009 FBAR also lists the maximum value held in the Banco Nacional Account as $17,956.00.

*Miga's failure to disclose the VP Bank Account and Banco Nacional Account was willful*

30.     In 2008 and 2009, Miga had a financial interest in, and signatory authority over, the VP Bank Account which had account balances exceeding $10,000.  Thus, on or before June 30 of 2009 and 2010, Miga was required to file an FBAR reporting his interest in the VP Bank Account for both 2008 and 2009, respectively.

31.     In 2009, Miga had a financial interest in, and signatory authority over, the Banco Nacional Account which had an account balance exceeding $10,000 in 2009.  Thus, on or before June 30 of 2010, MIga was required to file an FBAR reporting his interest in the Banco Nacional Account for 2009.

32.     Miga failed to timely file FBARs for 2008 and 2009 reporting his interest in and/control the VP Bank Account in those years.

33.     Miga's failure to timely report his financial interest in the VP Bank Account for 2008 and 2009 was willful.

34.     Miga failed to timely file an FBAR for 2009 reporting his interest in the Banco Nacional Account in 2009.

35.     Miga's failure to timely report his financial interest in the Banco Nacional Account for 2009 was willful.

36.     On Schedule B, Part III Line 7a of Miga's 2003 through 2008 income tax returns, Miga denied that he had **any** foreign bank accounts.

5

37. Miga did not provide any foreign bank account statements to his tax return preparer during 2003 through 2008.

38. For the 2003-2008 tax years, Miga was provided a questionnaire from his tax return preparer that specifically asked if he had signature authority or control over a foreign bank account.

39. Miga ignored and did not answer the questions on the 2003-2007 tax return preparer's questionnaire inquiring as to whether he had an interest in or signature authority or control over a foreign bank account.

40. Miga specifically checked a box "No" asserting that he did not have an interest in or signature or other authority over a financial account in a foreign country on his 2008 tax return preparer's questionnaire.

41. From 2003 through 2008 Miga was provided a questionnaire from his tax return preparer that specifically asked if he received income from a foreign country including interest and dividends.

42. Miga failed to disclose that during 2003-2008 he had received interest and dividends from a foreign bank account on his tax return preparer's questionnaires.

43. Miga failed to disclose the VP Bank Account on his 2008 tax return.

44. Miga's VP Bank Account generated income taxable in the United States from interest, dividends and capital gains in both 2008 and 2009.

45. Miga failed to report the interest, dividends or capital gains from the VP Bank Account on his 2008 federal income tax return.

46. Miga had VP Bank hold the VP Bank Account statements and not mail them to him.

47.     Miga placed the VP Bank Account in the name of Bridgeport a corporation in the BVI to conceal the account.

48.     Miga even failed to file Form 5471 with the IRS in 2008 and 2009 reporting his ownership in the foreign corporation Bridgeport.

49.     To further conceal the ownership of the VP Bank Account, Miga directed that a trust in the name of R.C.R. Foundation be formed in Lichtenstein to hold the bearer shares or ownership of Bridgeport.

50.     Miga had the R.C.R. Foundation hold all mail correspondence to him.

51.     Miga was a beneficiary of R.C.R. Foundation trust in 2008 and 2009.  In May of 2004, Miga executed a letter of wishes for the R.C.R. Foundation naming himself as the main beneficiary.

52.     On Schedule B, Part III Line 8 of Miga's 2008 and 2009 income tax returns, Miga denied that he had **any** interest in a foreign trust.

53.     Miga failed to file Form 3520 for 2008 and 2009 reporting his interest in the R.C.R. Foundation, a foreign trust.

54.     The R.C.R. Foundation's alleged purpose was for the support and benefit of Miga and his family.

55.     However, Miga stated that the R.C.R. Foundation was set up to prevent civil collection against his assets held in a foreign account.

*Miga's 2008 and 2009 FBAR Penalty assessments*

56.     31 U.S.C. § 5321(a)(5) provides for the imposition of civil penalties for a willful failure to comply with the reporting requirements of Section 5314 – *i.e,* when the person maintaining a foreign account fails to timely file an FBAR reporting that account despite having an obligation

to do so. For violations involving the willful failure to report the existence of an account, the maximum amount of the penalty that may be assessed is 50% of the balance of the account at the time of the violation or $100,000, whichever is greater. 31 U.S.C. § 5321(a)(5)(C)(i).

57. On June 30, 2009, the VP Bank Account had an aggregate balance of $3,683,839.

58. On June 30, 2010, the VP Bank Account had an aggregate balance of $2,799,445.

59. Due to Miga's willful failure to timely file FBARs reporting his financial interest in the VP Bank account for 2008 and 2009 and the Banco Nacional Account for 2009, a delegate of the Treasury Secretary assessed FBAR penalties against him pursuant to 31 U.S.C. § 5321(a)(5) on December 20, 2017, as follows:

| Tax Year | Amount of FBAR Penalty Assessment for VP Bank | Amount of FBAR Penalty Assessment for BN Banco National | Total Amount of the FBAR Penalty Assessments |
|---|---|---|---|
|  |  |  |  |
| 2008 | $1,841,920 |  | $1,841,920 |
| 2009 | $1,399,723 | $10,000 | $1,409,723 |
|  |  |  |  |

60. The IRS assessments of the 2008 and 2009 FBAR penalties were timely. Pursuant to 31 U.S.C. § 5321(b)(1), the statute of limitations on the assessment of an FBAR penalty is six years from the date of the violation. The Forms TD F 90-22.1 or FBARs for 2008 and 2009 years were due on June 30, 2009, and June 30, 2010, respectively. Thus, the last day for the assessment of the FBAR penalties for 2008 and 2009 was June 30, 2015, and June 30, 2016, respectively. However, on June 9, 2015, Miga signed a consent to extend the time to assess 2008 FBAR penalty until June 30, 2016. On April 13, 2016, Miga signed consents extending the time to assess the 2008 and 2009 FBAR penalties to December 31, 2017. The FBAR penalties for 2008 and 2009 were timely assessed on December 20, 2017.

61. A delegate of the Treasury Secretary also gave notice and demand of the penalty assessments for 2008 and 2009 to Miga.

62. Despite the notice and demand for payment, Miga failed to pay the 2008 and 2009 FBAR penalties assessed against him. Therefore, interest and other statutory additions continue to accrue on the unpaid FBAR penalty assessments against Miga.

63. As of February 1, 2019, Miga owed the United States $3,502,726.63 in FBAR penalties assessed under 31 U.S.C. § 5321, including interest and other statutory additions which have accrued and will continue to accrue as provided by law as follows:

| Aggregate Amount of FBAR Penalty Assessments | Late Payment Penalties | Accrued Interest | Total Amount Due as of February 1, 2019 |
|---|---|---|---|
| $3,251,643.00 | $214,736.51 | $36,347.12 | $3,502,726.63 |

64. Likewise, this suit is timely because it was commenced within two years of the assessment date. Pursuant to 31 U.S.C. § 5321(b)(2), a suit to reduce to judgment an FBAR penalty assessment must be commenced within two years from the date of assessment. Since the 2008 and 2009 FBAR penalties were assessed against Miga on December 20, 2017, the United States has until December 20, 2019, to timely file this suit.

WHEREFORE, the United States of America requests that the Court enter judgment in favor of the United States against Dennis Miga for Miga's 2008 and 2009 FBAR penalty assessments, penalties and interest in the aggregate amount of $3,502,726.63 as of February 1, 2019, plus accruals and such other and further relief as the Court deems just and proper.

>RICHARD E. ZUCKERMAN
>Principal Deputy Assistant Attorney General
>
>/s/ Herbert W. Linder
>HERBERT W. LINDER
>Ohio Bar No. 0065446
>Attorney, Tax Division
>Department of Justice
>717 N. Harwood, Suite 400
>Dallas, Texas  75201
>(214) 880-9754; (214) 880-9774 (facsimile)
>Herbert.W.Linder@usdoj.gov
>ATTORNEYS FOR UNITED STATES